UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARK L. TUBBS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 3:14-CV-1963 RLM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

Mark Tubbs seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court reverses the Commissioner's decision and remands the matter for further proceedings consistent with this opinion.

I. BACKGROUND

Mr. Tubbs alleges disability due to arthritis or degenerative changes in multiple joints, pancreatitis, and obesity. Following an administrative hearing in which Mr. Tubbs and a vocational expert testified, the ALJ issued a written decision, finding that Mr. Tubbs met the insured status requirements under the

1

Social Security Act and hadn't engaged in substantial gainful activity since the alleged onset date. The ALJ found that Mr. Tubbs' arthritis or degenerative changes in multiple joints, pancreatitis, and obesity were severe impairments, and concluded that Mr. Tubbs had non-severe impairments, including cardiovascular abnormality and gout, that didn't significantly limit his ability to perform basic work activities. The ALJ found that none of Mr. Tubbs' impairments met or medically equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.[1]

The ALJ determined that Mr. Tubbs had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with physical limitations.[2] While Mr. Tubbs couldn't perform his past relevant work (forklift driver, crater, and inventory control), the ALJ found that he could perform other jobs, including, but not limited to, addressor (690 jobs in Indiana and 96,000

---

[1] Specifically, the ALJ considered: 1.00 (musculoskeletal system), 5.00 (digestive system), 9.00 (endocrine disorders), 14.00 (immune system disorders), and the exacerbatory impact of Mr. Tubbs' obesity.

[2] The ALJ concluded that Mr. Tubbs had the additional limitations that (1) he couldn't be on his feet for more than fifteen minutes at any one time; (2) if he is required to sit for sixty minutes, he be allowed to stand for up to five minutes before sitting again (and while alternating his position in this manner he wouldn't need to abandon his work station or lose track of his assigned work duties); (3) he is limited to no more than occasional operation of foot controls; (4) he is to never climb ladders, ropes, or scaffolds; (5) he must engage in no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; (6) he be precluded from work place hazards, such as driving at work, operating moving machinery, working at unprotected heights, and working around exposed flames, unguarded large bodies of water, and concentrated exposure to unguarded hazardous machinery. The ALJ also noted that Mr. Tubbs uses a cane while walking and can't walk on uneven terrain or wet surfaces.

nationally), taper printed circuit layout (5,610 jobs in Indiana and 235,000 nationally), and surveillance monitor (820 jobs in Indiana and 74,000 nationally). The ALJ concluded Mr. Tubbs wasn't disabled within the meaning of the Social Security Act and so wasn't entitled to disability benefits.

When the Appeals Council denied Mr. Tubbs' request for review, the ALJ's decision became the final decision of the Commissioner. <u>Sims v. Apfel</u>, 530 U.S. 103, 107 (2000); <u>Jones v. Astrue</u>, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II. STANDARD OF REVIEW

The issue before the court isn't whether Mr. Tubbs is disabled, but whether substantial evidence supports the ALJ's decision that he is not disabled. <u>Scott v. Astrue</u>, 647 F.3d 734, 739 (7th Cir. 2011); <u>Nelms v. Astrue</u>, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Jones v. Astrue</u>, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, <u>Simila v. Astrue</u>, 573 F.3d 503, 513 (7th Cir. 2009); <u>Powers v. Apfel</u>, 207 F.3d 431, 434-435 (7th Cir. 2000), but, instead, must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's

decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). "At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence." Ali v. Colvin, No. 2:14-CV-305, 2015 WL 5474636, at *2 (N.D. Ind. Sept. 15, 2015).

### III. DISCUSSION

Mr. Tubbs argues that the ALJ made three errors that require remand: (1) the ALJ erroneously dismissed Mr. Tubbs's argument that he requires medical treatment too frequently to meet employer standards of attendance; (2) the ALJ didn't provide a sound explanation for dismissing the opinion of Mr. Tubbs's treating physician, and (3) the ALJ's credibility determination was flawed. Mr. Tubbs asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings. Mr. Tubbs's first two arguments require remand. While the ALJ's credibility determination might not be patently wrong, on remand the ALJ should ensure that his findings are reasoned, supported, and based only on proper factors.

4

*(1) Treatment Records Relating to Absenteeism*

Mr. Tubbs first argues that the ALJ erred in giving little weight to his treatment record, which, according to Mr. Tubbs, required an amount of legitimate medical visits that would make "maintaining work ... not possible due to his inherent absenteeism for medical intervention." The vocational expert testified at the hearing that missing more than one day per month would preclude employment in the unskilled types of jobs allowed for by the ALJ's residual functional capacity. The Commissioner contends that the ALJ reasonably rejected Mr. Tubbs's argument because he exhibited drug seeking behavior.

Qualifying for gainful employment requires the ability to work "on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The Social Security Administration interprets work "on a regular and continuing basis" to mean the ability to work "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p; Voigt v. Colvin, 781 F.3d 871, 874 (7th Cir. 2015). Frequent absences from work due to medical appointments could be evidence that a petitioner would be unable to work on a regular and continuing basis. *See* Voigt v. Colvin, 781 F.3d 871, 874 (7th Cir. 2015) ("To miss four workdays a month would reduce one's average workweek from five to four days, which would not constitute working on a sustained basis as defined by the Commission").

The vocational expert testified that if Mr. Tubbs missed more than one day per month due to medical appointments he would "have difficulty sustaining

5

competitive employment." At the hearing and in a post-hearing brief submitted to the ALJ, Mr. Tubbs highlighted evidence suggesting that he needed medical attention more than one day per month in the year following his alleged disability onset date. Evidence in the record supports the contention that Mr. Tubbs sought medical attention at a rate that could have caused him to miss work more than one day per month.

The ALJ rejected this argument because he afforded Mr. Tubbs's treatment history little weight, finding that "this treatment appears to have been conducted in relation to his drug seeking behavior." To support this finding, the ALJ cited the treatment records of three medical appointments during the period in question that suggested that Mr. Tubbs was abusing prescription medication. One record showed Mr. Tubbs had sought treatment at a hospital for opiate withdrawal. Another indicated that Mr. Tubbs sought treatment for Dilaudid abuse and noted that he was crushing his medication, mixing it with water, and injecting it. Finally, a doctor reported that Mr. Tubbs consumed excessive Dilaudid and was in opiate withdrawal.

The ALJ didn't provide a logical bridge to explain how the three treatment records he cited in which medical professionals noted Mr. Tubbs suffered from opiate withdrawal or was abusing his prescription medication permit the ALJ to dismiss Mr. Tubbs's entire and extensive treatment history. *See* Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010) (requiring that the ALJ provide a "'logical bridge' between the evidence and the conclusions" to allow a reviewing court to

6

properly assess the ALJ's findings). The Commissioner cites Kellems v. Astrue, 382 F. App'x 512, 515 (7th Cir. 2010), in support of the proposition that an ALJ can properly discount the testimony of a petitioner if he or she engages in drug seeking behavior. But in Kellems, the court held that a petitioner exhibited drug seeking when he or she "obtained, or attempted to obtain, pain medication by deceiving or manipulating a medical professional." Id.

The ALJ didn't find, and cited no evidence supporting the contention that, Mr. Tubbs obtained or attempted to obtain medication through deception, fraud, or manipulation. Rather, the ALJ found that:

> The record contains indicia that the claimant was drug seeking during the period in question, for example, treatment records in April and July 2012 indicate opiate withdrawal and that [Mr. Tubbs] was crushing his medications, mixing them with water, and injecting himself with said medications. Furthermore, records from August 2011 indicate that the claimant was consuming a greater number of pain medications than prescribed.

A logical bridge between that evidence and Mr. Tubbs's credibility is missing.

While an "ALJ [may] not err in considering the evidence that [a petitioner's medical] visits may have been related to an addiction problem rather than evidence of [an impairment]," an ALJ does err by "failing to even acknowledge the contrary evidence or to explain the rationale for crediting the identified evidence over the contrary evidence." Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ dismissed numerous legitimate treatment records because he concluded that three treatment visits were motived by drug seeking behavior. The ALJ didn't discuss why he believed the drug seeking behavior predominated

7

over legitimate motivations for treatment in the three visits he identified. Nor did the ALJ provide any discussion of why three suspect visits taint an entire treatment record. The court of appeals has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014).

*(2) Dr. Jeffrey Seizys' Medical Statement*

Mr. Tubbs next focuses on the weight the ALJ gave to a January 30, 2013 "Physician Questionnaire" completed by Dr. Jeffrey Seizys, in which Dr. Seizys indicated that if Mr. Tubbs were to sit for a prolonged period of time, he should elevate his legs "above hip height . . . as much as possible." This medical opinion is significant because the vocational expert testified that no jobs could accommodate Mr. Tubbs's limitations if the ALJ credited Dr. Seizys's requirement that Mr. Tubbs' legs be elevated. Mr. Tubbs notes that the ALJ gave little weight to Dr. Seizys's report and argues that the ALJ's conclusion that Dr. Seizys's recommendation was inconsistent with prior treatment records was erroneous. Mr. Tubbs further contends that if the ALJ felt he needed elaboration from Dr. Seizys to support his opinion, the ALJ had a duty to contact the doctor for clarification or further support.

The Commissioner concedes that an ALJ must contact a medical source when the evidence received is inadequate for the ALJ to make a disability determination, but contends that the ALJ reasonably relied on medical evidence that he found didn't substantiate the limitation called for in Dr. Seizys's report.

The ALJ viewed Dr. Seizys's post-hearing "Physician Questionnaire" as "an attempted rehabilitation of the record," noting that the form contained no mention of an impairment that would require Mr. Tubbs to elevate his legs, and gave little weight to Dr. Seizys's opinion. He found that the limitation was "inconsistent with [Mr. Tubbs's] most recent treatment records" and cited medical reports in the record.

An ALJ may discount medical evidence if it is inconsistent with other evidence in the record. Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). But the ALJ has a duty to "develop a complete medical history of at least the preceding twelve months." 42 U.S.C. § 423(d)(5)(B). As part of that obligation, "an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004); *accord* Moore v. Colvin, 743 F.3d 1118, 1127 (7th Cir. 2014); Simila v. Astrue, 573 F.3d 503, 516–517 (7th Cir. 2009). The ALJ didn't do that.

The ALJ found that the medical support for Dr. Seizys's opinion wasn't readily discernable, and in so doing triggered the duty to solicit additional information. His failure to do so can't be deemed harmless, because the

9

vocational expert testified that no jobs could accommodate Mr. Tubbs's limitations if the ALJ credited Dr. Seizys's requirement that Mr. Tubbs's legs be regularly elevated.

### *(3) Credibility Determination*

Finally, Mr. Tubbs contends that the ALJ's credibility determination is flawed because the ALJ employed boilerplate language, didn't consider all of the factors contained in SSR 96-7p,[3] and improperly considered Mr. Tubbs' drug screens. The Commissioner argues that the credibility determination should be upheld because the determination wasn't patently wrong and the ALJ properly considered, and discussed, the SSR 96-7p factors and the evidence.

An ALJ's credibility determinations "are entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness," but those determinations "are not immune from review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir.2005); *see also* Schmidt v. Astrue, 496 F.3d 833, 843 (7th Cir.2007) ("Because the ALJ is in the best position to observe witnesses, [the court] will not disturb [his] credibility determinations as long as they find some support in the record."). When evaluating credibility, an ALJ must "consider the entire case record and give specific reasons for the weight

---

[3] Although SSR 96-7p was superseded by SSR 16-3p on March 16, 2016, it was binding on the ALJ when his opinion was issued in 2013.

given to the individual's statements." Simila v. Astrue, 573 F.3d 503, 517 (7th Cir.2009) (quoting SSR 96–7p). The reviewing court must determine whether the ALJ's determination "was reasoned and supported," Elder v. Astrue, 529 F.3d 408, 413 (7th Cir.2008), and should not "overturn an ALJ's credibility determination unless it is patently wrong." Shideler v. Astrue, 688 F.3d 306, 311 (7th Cir.2012) (quotations omitted).

The ALJ's credibility determination employed language virtually identical to the "boilerplate language" that has been repeatedly criticized by the court of appeals. *See, e.g.,* Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013) (characterizing as "meaningless boilerplate" conclusory statements disconnected from any evidence in the record because they don't indicate to a reviewing court the basis for the credibility determination). Use of this boilerplate language is not fatal to the Commissioner's decision, provided the ALJ "otherwise points to information that justifies his credibility determination." Id.

The ALJ went beyond the boilerplate language and discussed the rationale for his credibility determination, including the SSR 96–7p factors. But he also found that Mr. Tubbs wasn't entirely credible because "the record indicates multiple dirty drug screens." The ALJ provides no reasoning to explain why a dirty drug screen demonstrates a lack of credibility. As already noted, an ALJ can properly discount the testimony of a petitioner if he or she engages in drug seeking behavior, but drug seeking behavior is defined as obtaining or seeking prescription medication "by deceiving or manipulating a medical professional."

11

Kellems v. Astrue, 382 F. App'x 512, 515 (7th Cir. 2010). The ALJ cited no evidence to suggest that Mr. Tubbs obtained or sought medication through deception, fraud, or manipulation.

Because this case must be remanded on other issues, the court need not reach any conclusions as to whether this problem alone renders the ALJ's credibility finding patently wrong. On remand, the ALJ should re-examine the credibility determination and ensure that the finding is reasoned, supported, and based only on the proper factors. *See* Creek v. Vill. of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, (1939) ("While a mandate is controlling as to matters within its compass, [however,] on the remand a lower court is free as to other issues.").

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is VACATED and this case is REMANDED for further proceeding consistent with this opinion.

SO ORDERED.
ENTERED: September 7, 2016

                          /s/ Robert L. Miller, Jr.
                          Judge
                          United States District Court